NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

ANITRA PICKETT, *Petitioner/Appellant*,

*v.*

TROND BORG, *Respondent/Appellee*.

No. 1 CA-CV 19-0570 FC
FILED 10-1-2020

Appeal from the Superior Court in Maricopa County
No. FC2017-051652
The Honorable Adam. D. Driggs, Judge

**REVERSED AND REMANDED IN PART, AFFIRMED IN PART**

COUNSEL

Canterbury Law Group LLP, Scottsdale
By Jonathan P. Ibsen, Craig Peter Cherney
*Counsel for Petitioner/Appellant*

Davis Miles McGuire Gardner PLLC, Tempe
By Spencer T. Schiefer
*Counsel for Respondent/Appellee*

------

**MEMORANDUM DECISION**

Presiding Judge Jennifer M. Perkins delivered the decision of the Court, in which Judge David B. Gass and Judge Michael J. Brown joined.

------

**P E R K I N S**, Judge:

**¶1**     Appellant Antira Pickett ("Mother") challenges two aspects of the superior court's dissolution decree: (1) the award of final legal decision-making authority to Father and (2) the determination that a Norwegian government pension earned by Appellee Trond Borg ("Father") is his sole and separate property. We affirm as to the first issue but reverse and remand as to the second.

## FACTUAL AND PROCEDURAL BACKGROUND

**¶2**     Mother filed for dissolution of the parties' marriage in 2017. The parties have two minor children. Though the parties agreed to share joint legal decision-making authority, both sought final legal decision-making authority if they could not reach an agreement. Father requested such authority in all matters, while Mother sought it only for medical and educational decisions. The superior court found that Mother had "attempted to control even minor, everyday decisions that do not fall within the confines of legal decision-making, such as choices of movies, activities and nutrition." On that basis, the court awarded "final decision-making authority" to Father, stating that Mother had "demonstrated a complete inability to co-parent or even consider Father's role of rights in the decision-making process."

**¶3**     The parties also disagreed on how to characterize a government pension Father earned while the family lived in Norway (the "Folketrygden"). Although they agreed it could not be legally divided, Mother contended it was community property and requested its value be included in calculating an equalization payment. The court ordered Father to make an equalization payment but declined to include the Folketrygden's value, concluding it was "very similar" to a Social Security entitlement in the United States, which is treated as the sole and separate property of the participating spouse. *Kelly v. Kelly*, 198 Ariz. 307, 308, ¶ 5 (2000) (citing 42 U.S.C. § 407(a)).

¶4        Mother timely appealed from the decree. We have jurisdiction under Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1).

## DISCUSSION

¶5        At the outset we note that Mother raises several challenges to the court's factual findings for the first time in her reply brief. We typically do not consider arguments raised for the first time in reply, *In re Marriage of Pownall*, 197 Ariz. 577, 583, ¶ 25 n.5 (App. 2000), and we will not do so here.

I.        **The Superior Court Did Not Abuse Its Discretion by Awarding Father Final Legal Decision-Making Authority.**

¶6        We review the superior court's legal decision-making orders for an abuse of discretion. *DeLuna v. Petitto*, 247 Ariz. 420, 423, ¶ 9 (App. 2019). An abuse of discretion occurs when the court commits an error of law in reaching a discretionary decision or when the record does not support the court's decision. *Id.*

¶7        Mother contends the court erred in granting Father "unrestricted tiebreaker powers," arguing that such powers constitute de facto sole legal decision-making authority. In sole legal decision-making, "one parent has the legal right and responsibility to make major decisions for a child." A.R.S. § 25-401(2), (6). That parent

> may determine the child's upbringing, including the child's education, care, health care and religious training, unless, on motion by the other parent, the court, after a hearing, finds that in the absence of a specific limitation of the parent designated as the sole legal decision-maker's authority, the child's physical health would be endangered or the child's emotional development would be significantly impaired.

A.R.S. § 25-410(A).

¶8        The decree does not grant Father such broad authority. It instead requires that both parties "give good faith consideration to the views of the other and put forth best efforts to reach a consensus decision." It also specifically limits Father's final decision-making authority to situations where the parties "cannot agree after making a good faith effort to reach an agreement," as the court believed Father would "consider Mother's views and positions in making major decisions regarding the

children." We therefore reject Mother's contention that the decree imposes "zero limits . . . on [Father's] tie-breaker authority."

¶9        Mother also relies on *Nicaise v. Sundaram*, 245 Ariz. 566 (2019). There, the superior court awarded joint legal decision-making authority but gave the father "the ability to make the final decision as to medical, mental health, dental, and therapy issues" if the parents could not agree. *Id*. at 567, ¶ 3. Mother contended this amounted to an award of sole legal decision-making, but our supreme court disagreed:

> Awarding joint legal decision-making authority with final decision-making authority over certain matters to one parent . . . creates shared legal decision-making with the possibility that one parent will exercise a superior right if the parents cannot reach a joint agreement in good faith. By contrast, an award of sole legal decision-making . . . creates unshared authority. The distinction is illustrated by the family court's order here conditioning the exercise of Father's final legal decision-making authority upon good-faith efforts to reach a consensus. Such orders are common and commendable and do not convert joint into sole legal decision-making.

*Id*. at 568-69, ¶ 14. Like the decree at issue in *Nicaise*, the decree in this case requires the parties to confer in good faith before making decisions for the children and grants Father's tie-breaking authority only where they cannot agree. The decree is therefore consistent with *Nicaise*.

¶10        Mother also contends the "specified decisions" language of § 25-401(2) only allows courts to award final legal decision-making authority for some, but not all, decisions:

> "Joint legal decision-making" means both parents share decision-making and neither parent's rights or responsibilities are superior except with respect to specified decisions as set forth by the court or the parents in the final judgment or order.

A.R.S. § 25-401(2). But § 25-403(A) obligates the court to "determine legal decision-making . . . in accordance with the best interests of the child." *See Hays v. Gama*, 205 Ariz. 99, 102, ¶ 18 (2003) ("We have repeatedly stressed that the child's best interest is paramount in custody determinations."); *see also State v. Leonardo, ex rel. County of Pima*, 226 Ariz. 593, 595, ¶ 8 (App. 2011) ("In interpreting a statute, we must construe it together with other

statutes relating to the same subject matter."). The court determined that granting Father overall tie-breaker authority was in the children's best interests, finding Mother had "attempted to control even minor, everyday decisions that do not fall within the confines of legal decision-making" and "ha[d] not demonstrated an ability to co-parent in a joint legal decision-making scenario without one parent having final say." We do not interpret § 25-401(2) to limit the court's ability to award tie-breaking authority if it is in the children's best interests.

¶11        Because we do not remand on legal decision-making authority or parenting time, we need not address Mother's contention that Father failed to submit a proposed parenting plan under A.R.S. § 25-403.02(A). We also decline Mother's request that we "clarify" that statute.

II.    **The Superior Court Erred in Concluding the Folketrygden is Father's Sole and Separate Property.**

¶12        Mother concedes the Folketrygden cannot be divided but contends it is community property the court should have included in the equalization payment calculation. Section 25-318(A) directs the court to first "assign each spouse's sole and separate property to such spouse" and then "divide the community, joint tenancy and other property held in common equitably, though not necessarily in kind, without regard to marital misconduct." *See Martin v. Martin*, 156 Ariz. 452, 455-56 (1988). Whether property is community or separate is established at the time of its acquisition and does not change except by agreement or operation of law. *Bender v. Bender*, 123 Ariz. 90, 92 (App. 1979). We review the court's characterization of the Folketrygden *de novo*. *Bell-Kilbourn v. Bell-Kilbourn*, 216 Ariz. 521, 523, ¶ 4 (App. 2007).

¶13        The court accepted Father's contention that his Folketrygden benefits are like Social Security benefits. While Father contended "Folketrygden" translates to "social security," he did not offer any Norwegian law or expert testimony at trial. He instead argues for the first time on appeal that Norwegian law "clearly sets forth a spouse's Folketrygden as an excepted asset that is not divided upon divorce," citing one Norwegian authority. He did not provide this authority to the superior court or this court. *See Kadota v. Hosogai*, 125 Ariz. 131, 136 (App. 1980) ("[T]his Court is not required to undertake the burden of researching and determining foreign law without any assistance from the attorneys.").

¶14        Mother, for her part, contends she "provided far more compelling evidence" that the Folketrygden is community property,

"including . . . a Norwegian attorney's analysis of the Norwegian website that administers the public pensions, and a certified translation thereof." These documents, however, are not part of the record. We, therefore, cannot consider them. *Ness v. W. Sec. Life Ins. Co.*, 174 Ariz. 497, 500 (App. 1992). The only somewhat relevant analysis in the record did not address whether the Folketrygden or its benefits can be divided in divorce; it only states that "it is not possible to calculate a person's retirement pension until that person actually applies for retirement."

¶15         Given this lack of evidence, we may decide the issue under Arizona law. *Gemstar Ltd. v. Ernst & Young*, 185 Ariz. 493, 501 (1996) (quoting Restatement (Second) of Conflict of Laws § 136). Section 25-318(A) provides that "property acquired by either spouse outside this state shall be deemed to be community property if the property would have been community property if acquired in this state." And pensions earned during marriage generally are treated as community property. *Kelly*, 198 Ariz. at 308, ¶ 5; *Kohler v. Kohler*, 211 Ariz. 106, 108, ¶ 10 (App. 2005).

¶16         Father bore the burden to overcome these presumptions with clear and convincing evidence. *See Schickner v. Schickner*, 237 Ariz. 194, 199, ¶ 22 (App. 2015). Because he did not meet that burden—indeed, neither party presented any competent evidence comparing the Folketrygden to Social Security—the court erred in determining the Folketrygden was Father's sole and separate property. On remand, the court shall divide the value of Father's pension equitably.

III.    **Attorney Fees and Costs on Appeal**

¶17         Both parties request their attorney fees and costs incurred in this appeal under A.R.S. § 25-324(A), under which we must consider "the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings." Having considered these matters, we decline to award fees or costs. We also deny Mother's fee request under Arizona Rule of Civil Appellate Procedure 25 and A.R.S. § 12-349(A).

**CONCLUSION**

**¶18**        We affirm the superior court's legal decision-making and parenting time orders. Because we conclude Father's Folketrygden should be treated as community property under Arizona law, however, we reverse and remand for further proceedings on the equalization payment due to Mother. The court may, in its discretion, hear additional evidence on how to calculate the Folketrygden's value.



AMY M. WOOD • Clerk of the Court
FILED:    AA